## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REGINA DUNN<br>Fleming Island, FL 32003 | CIVIL ACTION NO. |
| and | |
| PATRICE MACHIKAS<br>Glenmoore, PA  19343 | |
| **Plaintiffs** | |
| v. | JURY TRIAL DEMANDED |
| MERCEDES-BENZ OF FORT<br>WASHINGTON, INC.<br>404 Pennsylvania Avenue<br>Fort Washington, PA  19034 | |
| and | |
| CONDOR AUTOMOTIVE GROUP, LLC<br>404 Pennsylvania Avenue<br>Fort Washington, PA  19034 | |
| and | |
| STEPHEN SILVERIO<br>101 Carriage Court<br>Plymouth Meeting, PA  19462 | |
| and | |
| VINCENT PETRUZZIELLO<br>404 Pennsylvania Avenue<br>Fort Washington, PA 19034 | |
| **Defendants** | |

## <u>COMPLAINT</u>

## I.   <u>INTRODUCTION</u>

Plaintiffs, Regina Dunn ("Dunn") and Patrice Machikas ("Machikas"), bring this

action against their former employers, Mercedes-Benz of Fort Washington, Inc.

("MBFW") and Condor Automotive Group, LLC ("Condor"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951 *et seq.* ("PHRA"). While they were employed by Defendants, MBFW and Condor ("Corporate Defendants"), Plaintiffs were discriminated against, harassed, and subjected to a hostile and abusive working environment because of their sex.  In addition, they were retaliated against and fired for complaining about and opposing the Defendants' discriminatory acts and practices.  Defendants' Chief Operating Officer, Stephen Silverio ("Defendant Silverio"), aided and abetted the commission of some of the discriminatory and retaliatory acts.  Defendants' Chief Financial Officer, Vincent Petruzziello ("Defendant Petruzziello"), also aided and abetted the commission of some of the discriminatory and retaliatory acts.  Plaintiffs are joining in this action pursuant to Fed.R.Civ.P. 20(a) because they were both victims of Defendants' pattern and practice of discrimination and retaliation, and their claims involve common questions of fact and law.

## II.    **PARTIES**

1.    Dunn is an adult female and a citizen of the state of Florida, residing in Fleming Island, FL.

2.    Machikas is an adult female and a citizen of the Commonwealth of Pennsylvania, residing in Glenmoore, PA.

3.    MBFW, a Pennsylvania corporation, is an authorized Mercedes-Benz dealer with a principal place of business at 404 Pennsylvania Avenue, Fort Washington, PA  19034.

4.     Condor is a limited liability company which owns, operates and/or manages automobile dealerships, including MBFW, and which does business at 404 Pennsylvania Avenue, Fort Washington, PA 19034.

5.     At all relevant times, Corporate Defendants acted in concert and as alter egos through their authorized agents, servants and employees, acting within the course and scope of their agency and employment, and in furtherance of the mission, business and affairs of Corporate Defendants.

6.     Defendant Silverio is an adult male residing at 101 Carriage Court, Plymouth Meeting, PA 19462 who at all relevant times was the Chief Operating Officer of Corporate Defendants.

7.     Defendant Petruzziello is an adult male whose residence is presently unknown but is believed to have a business address at 404 Pennsylvania Avenue, Fort Washington, PA 19034 who at all relevant times was the Chief Financial Officer of Corporate Defendants.

III.   **JURISDICTION AND VENUE**

8.     The Court has jurisdiction over this action, and in particular, Plaintiffs' claims arising under Title VII, pursuant to 42 U.S.C. § 2000e-(5)(f)(3) and 28 U.S.C. § 1331.

9.     The Court has supplemental jurisdiction over Plaintiffs' claims arising under the PHRA pursuant to 28 U.S.C. § 1367(a).

10.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) in that some or all Defendants reside in this district, and all or a substantial part of the events and occurrences giving rise to Plaintiffs' claims occurred here.

11. Venue is also proper in this judicial district pursuant to 42 U.S.C. § 2003e-(5)(f)(3) because the unlawful employment practices were committed in this district, and employment records relevant to those practices are maintained and administered here.

## IV. PLAINTIFFS' COMPLIANCE WITH ADMINISTRATIVE REQUIREMENTS

12. On or about December 23, 2008, Dunn filed a timely administrative Complaint of Discrimination against all Defendants with the Pennsylvania Human Relations Commission ("PHRC"), in which Dunn complained of acts and practices of discrimination and retaliation alleged herein. Dunn's Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). Attached hereto, as Exhibit "1", is a true and correct copy of Dunn's Complaint (with minor redactions for purposes of electronic filing of confidential/identifying information).

13. On or about March 16, 2009, Dunn filed an Amended Complaint of Discrimination against all Defendants with the PHRC in which she complained of additional acts of discrimination and retaliation alleged herein. Dunn's Amended Complaint was cross-filed with the EEOC. Attached hereto, as Exhibit "2", is a true and correct copy of Dunn's Amended Complaint (with minor redactions for purposes of electronic filing of confidential/identifying information).

14. On or about February 16, 2010, the EEOC issued to Dunn a Notice of Right to Sue, informing her that the EEOC was terminating the processing of her Complaints (Charges) of Discrimination because more than 180 days had passed since the filing of same, and that she was required to file this lawsuit under Title VII within 90 days of her receipt of the Notice. Attached hereto, as Exhibit "3", is a true and correct

copy of the Notice of Right to Sue issued to Dunn by the EEOC (with minor redactions for purposes of electronic filing of confidential/identifying information).

15. Dunn is filing this action within 90 days of her receipt of the Notice of Right to Sue.

16. On or about January 15, 2009, Machikas filed a timely administrative Complaint of Discrimination against all Defendants with the PHRC in which she complained of acts and practices of discrimination and retaliation alleged herein. Machikas' Complaint was cross-filed with the EEOC. Attached hereto, as Exhibit "4", is a true and correct copy of Machikas' Complaint (with minor redactions for purposes of electronic filing of confidential/identifying information).

17. On or about February 16, 2010, the EEOC issued to Machikas a Notice of Right to Sue, informing her that the EEOC was terminating the processing of her Complaint (Charge) of Discrimination because more than 180 days had passed since the filing of same, and that she was required to file this lawsuit under Title VII within 90 days of her receipt of the Notice. Attached hereto, as Exhibit "5", is a true and correct copy of the Notice of Right to Sue issued to Machikas by the EEOC (with minor redactions for purposes of electronic filing of confidential/identifying information).

18. Machikas is filing this action within 90 days of her receipt of the Notice of Right to Sue.

19. For the reasons stated above, Plaintiffs have the right to include in this action, their PHRA claims against all Defendants. The PHRA claims are properly before the Court because Plaintiffs filed their Complaints of Discrimination with the PHRC more than one year ago.

20.     For all of the reasons stated above, Plaintiffs have fully and timely complied with all administrative prerequisites and requirements for the filing of this action under Title VII and the PHRA.

## V.     FACTUAL BACKGROUND

### A.     Plaintiffs' Employment Histories With Corporate Defendants

21.     Dunn was hired by Corporate Defendants on or about October 3, 2007, as the General Sales Manager for MBFW.

22.     Dunn was hired at the urging and recommendation of Joseph Esposito (male), who was hired by Corporate Defendants on or about October 1, 2007, to be the General Manager for MBFW.

23.     Esposito was recruited by Corporate Defendants for the position of General Manager for MBFW; and he had worked with Dunn at another car dealership and was well aware of her skills and qualifications.  Esposito informed Corporate Defendants that he would not accept their job offer unless Dunn was also hired.

24.     Although Corporate Defendants were opposed to hiring Dunn as the General Sales Manager for MBFW because she is a woman, they relented and agreed to hire Dunn because they wanted Esposito.

25.     Dunn occupied the position of General Sales Manager for MBFW from the time of her hire on or about October 3, 2007 until November 4, 2008, when she was terminated.

26.     From the time of her hire until approximately October 6, 2008, Dunn reported to Esposito in his capacity as General Manager for MBFW.  Throughout that

period, Esposito reported to Defendant Silverio and Defendant Silverio in turn reported to Carlos Hoz de Villa (male), Corporate Defendants' Chief Executive Officer. Defendant Petruzziello also reported to Mr. Hoz de Villa.

27.     Esposito was terminated by Corporate Defendants on or about October 6, 2008, and was replaced by Paul MacKenzie (male).

28.     From the time of Esposito's termination until the time of Dunn's termination, Dunn reported to MacKenzie and MacKenzie reported to Defendant Silverio.

29.     Throughout the course of her employment with Corporate Defendants, Dunn performed her job responsibilities in a highly competent manner.

30.     Machikas was hired by Corporate Defendants on or about June 2, 2008, as a Customer Relations Manager/Specialist for MBFW.  The decision to hire Machikas was made primarily by Esposito.

31.     Machikas was employed by Corporate Defendants from approximately June 2, 2008 until November 3, 2008, when she was terminated.

32.     Throughout the entire course of her employment with Corporate Defendants, Machikas reported to Dunn.  Machikas also reported to Esposito from the time of her hire until on or about October 6, 2008, when Esposito was terminated.  From the time of Esposito's termination until the time of Machikas' termination, Machikas reported to MacKenzie and Dunn.

33.     Throughout the course of her employment with Corporate Defendants, Machikas performed her job responsibilities in a highly competent manner.

34.     At all relevant times, Corporate Defendants were the "employers" of Plaintiffs, as defined by Title VII and the PHRA.

35.     At all relevant times, Plaintiffs were "employees" of Corporate Defendants, as defined by Title VII and the PHRA.

**B.     Acts and Practices of Sexual Harassment and Discrimination to Which Plaintiffs Were Subjected by Defendants**

**(i)     Dunn**

36.     Consistent with their reluctance to hire Dunn because of her sex, Corporate Defendants failed to make a company-wide announcement of the hiring of Dunn.  On the other hand, Corporate Defendants did announce the hiring of Esposito and Steven Niolu (male) (Service Director), both of whom commenced employment with Corporate Defendants around the same time as Dunn.

37.     Beginning in approximately November 2007 and continuing until approximately August 2008, Defendant Silverio, in his capacity as an agent and officer of Corporate Defendants, subjected Dunn to acts of sexual harassment, discrimination on the basis of sex, and a hostile and abusive work environment based upon sex.

38.     Defendant Silverio's discriminatory, retaliatory and sexually-harassing acts, statements and conduct that affected Dunn included the following:

(a)     Telling Dunn that Corporate Defendants did not want to inform the male sales representatives what her job title was (General Sales Manager) because they did not want to work for a woman;

(b)     Telling Esposito that Corporate Defendants had to replace Dunn with a man because "men don't respect her";

(c)    Referring to Dunn as "a stupid fucking cunt who can't count";

(d)    Referring to Dunn as "a dumb fucking bitch";

(e)    Telling Esposito and other male employees that Dunn had a "great ass" and was "probably great in the sack";

(f)    Taking a poll of Dunn's male direct reports, asking them whether they thought she was a "wild tiger" or a "cold fish" in bed;

(g)    Questioning Dunn's male direct reports regarding whether they thought she was a "bitch" for whom they could not work;

(h)    Asking Esposito, after Dunn had cooked a luncheon for the management team, "She cooks, what else is she good at?";

(i)    Referring to Dunn as "Suzy Cream Cheese";

(j)    Making late-night phone calls to Dunn at her home in which he asked personal questions such as, "Did you get some [sex] this weekend?", and make it clear to Dunn that he wanted to have sex with her;

(k)    Refusing to communicate with Dunn directly, but instead contacting her male direct reports with questions that should have been addressed to her;

(l)    Contacting Brad Bayard (male), who had been demoted from General Sales Manager shortly before Dunn was hired and who reported to Dunn, with questions that should have been addressed to Dunn;

(m)    Excluding Dunn from General Managers' meetings while inviting her male counterparts, including one of her male subordinates, to attend;

(n)   Refusing to pay Dunn in accordance with the bonus and commission plan that had been agreed upon at the time of her hire, on the asserted grounds that she was a single mother with three children who had nowhere else to go;

(o)   Pressuring Esposito to fire Dunn even though she was performing her job very well; and

(p)   Criticizing Dunn, harshly and unjustifiably, in the presence of her male colleagues and subordinates, while treating the males with more respect.

39.   Defendant Silverio's sexual advances, overtures and other conduct of a sexual nature directed at Dunn were inappropriate and unwelcome.

40.   Beginning in approximately November 2007 and continuing until approximately November 2008, Defendant Petruzziello, in his capacity as an agent and officer of Corporate Defendants, subjected Dunn to acts of sexual harassment, discrimination on the basis of sex, and a hostile and abusive work environment based upon sex.

41.   Defendant Petruzziello's discriminatory and retaliatory sexually harassing acts, statements and conduct that affected Dunn included the following:

(a)   Repeatedly referring to Dunn as a "bitch;"

(b)   Cornering Dunn in her office while intoxicated, screaming at her and calling her a "fucking liar" while blocking her exit from her office;

(c)   Pressuring Esposito to fire Dunn even though she was performing her job very well;

(d)     Excluding Dunn from managers' meetings while inviting her male colleagues and explaining that the meetings were for those that had a future with Corporate Defendants;

(e)     Ignoring Dunn's suggestions and recommendations while treating male employees with more respect; and

(f)     Criticizing Dunn, harshly and unjustifiably, in the presence of her male colleagues and subordinates, while treating the males with more respect.

**(ii)     Machikas**

42.     Throughout the week of July 14, 2008, while Esposito was away on vacation, Defendant Silverio, who had little previous contact with Machikas, subjected Machikas to a series of inappropriate and offensive comments and acts which resulted in Machikas being subjected to harassment, discrimination, and a hostile and abusive work environment based upon sex.

43.     Defendant Silverio's discriminatory and sexually-harassing acts, statements and conduct that affected Machikas included the following:

(a)     Telling Machikas – despite the fact that she was performing her job very well and had been commended for her performance by her supervisors and Hoz de Villa – that he (Silverio) was totally opposed to hiring her, that it was a mistake to hire her, and that she was serving no purpose;

(b)     Telling Machikas – in the context of the comments referenced above – that she should be "grateful" or "extremely grateful" to him for her job and because he was spending money to train her;

(c)     Asking Machikas how she was "going to show [her] gratitude" to him;

(d)     Suggesting to Machikas by his remarks about being "grateful" and "showing her gratitude" that if she agreed to perform a sexual favor for him or to have a sexual relationship with him, she could keep her job;

(e)     Calling Machikas a "glorified part-time secretary" – even though her job responsibilities were significantly greater than that; and

(f)     Standing directly behind Machikas while she was sitting at her desk in front of her computer, virtually pinning her to the desk with no reasonable means of escape.

44.     Defendant Silverio's sexual advances, overtures and other conduct of a sexual nature directed at Machikas were inappropriate and unwelcome.

**C.     Plaintiffs' Complaints About and Opposition to the Discriminatory Acts and Practices and Reports to Defendants Regarding Same**

**(i)     Dunn**

45.     Dunn complained to her supervisor, Esposito, about Defendant Silverio's sexually- harassing and discriminatory acts and conduct, some of which Esposito had firsthand knowledge of.  Although Esposito reported Dunn's complaints to Defendant Silverio, Defendant Silverio's inappropriate behavior persisted.

46.     On or about August 5, 2008, Dunn sent a letter to Hoz de Villa, Corporate Defendants' CEO, in which she complained of Defendant Silverio's sexually-harassing and discriminatory acts and practices, directed at Dunn and Machikas ("Dunn Letter").

47.     The Dunn Letter informed Hoz de Villa, *inter alia,* that:

(a)     Defendant Silverio had called Dunn a "bitch";

(b)     Defendant Silverio had made comments to male employees about Dunn's body, including that she had a "great ass";

(c)     Defendant Silverio had commented to other employees that Dunn was "probably great in bed";

(d)     Defendant Silverio had told Dunn she was not respected by the sales team because she was a woman;

(e)     Defendant Silverio had called Dunn at home at night, attempting "to steer from a business conversation to a personal conversation";

(f)     Other female employees had "expressed the same concern" about Defendant Silverio; and

(g)     Machikas had been sexually harassed by Defendant Silverio, with Defendant Silverio leaving Machikas with the impression that he "could be assuaged if [Machikas] was willing to engage with him socially".

48.     Hoz de Villa received the Dunn Letter on or about August 6, 2008.

**(ii)     Machikas**

49.     In July of 2008, Machikas complained to her supervisors and to a third manager that she had been sexually harassed and discriminated against by Defendant Silverio during the week of July 14, 2008.

50.     Machikas' complaints made to Defendants regarding Defendant Silverio's conduct included the following:

(a)     In July 2008, Machikas complained to Esposito (when he returned to work from vacation) that she had been sexually harassed by Defendant Silverio the previous week when Defendant Silverio had said to her, repeatedly, that she should be

"grateful" to him for allowing her to keep her job, and when he had asked her how she was going to show her "gratitude" to him;

      (b)    In July 2008, Machikas complained to Dunn that Defendant Silverio's abusive treatment of her coupled with his inappropriate comments had caused her to believe that Defendant Silverio would stop "berating" her and threatening her job security if she agreed to have a personal or sexual relationship with him; and

      (c)    In July 2008, Machikas complained to Kirstie Thomas (female), Defendants' Business Development Manager (whose responsibilities included assisting in the training of Machikas) that she had been sexually harassed by Defendant Silverio when Defendant Silverio had suggested to her by his comments about being "grateful" and showing her "gratitude", that if she would have sexual relations with him, he would allow her to keep her job.

51.    In addition, during the week of July 21, 2008, upon Esposito's return to the office from his vacation, Dunn reported to Esposito that Machikas had complained that she had been sexually harassed by Defendant Silverio.

52.    In July 2008, Esposito informed Joann George (female), Corporate Defendants' Human Resources Manager, that Machikas believed she had been sexually harassed by Defendant Silverio and that there was a "serious problem" with Defendant Silverio.

53.    In July 2008, Esposito informed Defendant Silverio that Machikas had complained that Defendant Silverio had sexually harassed her.

54.    In July 2008, Thomas told George that Machikas had complained that she had been sexually and verbally harassed by Defendant Silverio.

**D.**   **Defendants' Antagonistic Reaction to Plaintiffs' Complaints**

55.   Defendant Silverio was made aware of the Dunn Letter (and its contents) in August 2008, shortly after it was received by Hoz de Villa.

56.   Upon learning of the Dunn Letter, Defendant Silverio, referring to Dunn, instructed Esposito to "get the fucking cunt and meet me", and he ordered Esposito to "fix" the problem resulting from Plaintiffs' complaints of discrimination and harassment.

57.   Defendant Silverio's instructions to Esposito resulted in a meeting between Dunn, Esposito and Defendant Silverio which took place in or around August 2008.

58.   At that meeting, Defendant Silverio threatened Dunn (in the presence of Esposito) for having dared to send the Dunn Letter to Hoz de Villa.  Defendant Silverio's threats to Dunn at the meeting included the following:  that Dunn needed to "drop this business"; that the "car business is small"; that Dunn would "never get another job" if she pursued her discrimination and harassment claims; that it was "tough enough" for a woman in the car business; and that if Dunn pursued her claims, she would be "hire proof".

59.   After he learned of the Dunn Letter, Defendant Silverio threatened Esposito if he dared to support Dunn in her discrimination and harassment claims.  For example, Defendant Silverio told Esposito, in reference to Dunn's complaints:  "I want to make you a VP but we just need this [Dunn matter] put to sleep"; "this isn't anything you want to have on your resume"; and if Esposito was "going to fall on the sword for [Dunn]", it would "ruin [his] career".

a.      After he learned of the Dunn letter, Defendant Petruzziello threatened Esposito if he supported Dunn in her discrimination and harassment claims.  For example, Defendant Petruzziello told Esposito that if he did not tell the truth during the course of the subsequent investigation into Dunn's complaints and the investigation expanded that he would have to "deal" with both Defendant Petruzziello and Hoz de Villa.  Defendant Petruzziello then told Esposito that if he did tell the truth, Corporate Defendants would not take any action for sixty (60) to ninety (90) days while he sought alternate employment, as it would be better for him to look for a job while he was still employed.

60.     After Esposito was terminated, Defendant Silverio warned Dunn, "You are not protected anymore".

61.     After Esposito was terminated, Defendant Silverio ignored and failed to communicate with Dunn regarding matters relating to the business of MBFW in which Dunn should have been directly involved as the General Sales Manager.

62.     Upon learning from Esposito in July 2008 that Machikas had accused him of sexual harassment, Defendant Silverio told Esposito that Machikas' complaint was "bullshit".

63.     Upon learning from Esposito in July  2008 of Machikas' claim of sexual harassment, Defendant Silverio said to Esposito, in reference to Machikas, "That is what happens when we hire cunts to work in the business".

**E.     Defendants' Inadequate or Lack of Investigation of**
**Plaintiffs' Complaints of Harassment and Discrimination**

64.     Shortly after Hoz de Villa received the Dunn Letter, Corporate Defendants hired an attorney for the ostensible purpose of conducting a fair and impartial investigation of the issues raised in the Dunn Letter.

65.     However, the investigation conducted by Corporate Defendants and their attorney-agent was neither fair nor impartial.  For example, when Dunn met with the attorney, he treated Dunn in a hostile and antagonistic manner, and failed to even question her regarding some of the main complaints about Defendant Silverio she had made in the Dunn Letter.

66.     In addition, although Dunn and Esposito told the attorney who was conducting the investigation that he should interview Machikas as part of the investigation, the attorney never interviewed or questioned Machikas – even though Machikas' complaint about Defendant Silverio had specifically been mentioned in the Dunn Letter.

67.     In fact, Corporate Defendants decided that their investigation would *not* include or extend to Machikas – even though George, the Human Resources Manager, had assured Esposito and Thomas that Machikas' complaint *would* be investigated.

68.     Corporate Defendants and George failed to investigate Machikas' complaint regarding Defendant Silverio – even though Esposito and Thomas had informed George that Machikas had complained she had been sexually harassed by Defendant Silverio.

69.     In or around September 2008, Dunn had a meeting with Hoz de Villa and Pablo Zagarra (male), Corporate Defendants' Vice-President of Development, at which

Dunn was informed that Corporate Defendants had concluded their investigation and that while Defendant Silverio "may have crossed the line a little", he had not done anything that was "really inappropriate".

70.     Corporate Defendants thus went out of their way to support and protect Defendant Silverio, and they took no remedial action.

71.     Corporate Defendants failed to discipline Defendant Silverio for his discriminatory acts and practices.

**F.     Discriminatory and Retaliatory Terminations of Plaintiffs**

72.     Corporate Defendants terminated Plaintiffs on the same day, on or about November 3, 2008.

**(i)     Dunn**

73.     Hoz de Villa informed Dunn of her termination, telling her that Corporate Defendants were going to work with fewer managers, and therefore, that MacKenzie (who had replaced Esposito as General Manager of MBFW), was also going to take over Dunn's position as General Sales Manager for MBFW.

74.     However, on the same day Dunn was terminated, she was replaced by David Reedman (male), a new hire, thus establishing that the reason given to Dunn for her termination was false and pretextual.

75.     Corporate Defendants have failed to provide a legitimate, non-discriminatory or non-retaliatory reason for the termination of Dunn.

76.     Corporate Defendants further discriminated and retaliated against Dunn following her termination by informing her former co-workers, prospective employers

and Mercedes-Benz representatives, falsely and maliciously, that Dunn had stolen from Defendants and had been terminated for that reason.

77.     Dunn's sex was a motivating and/or determinative factor in Corporate Defendants' discriminatory treatment of Dunn, including the hostile work environment to which she was subjected and her termination.

78.     Dunn's complaining of discrimination was a motivating and determinative factor in Corporate Defendants' retaliatory treatment of Dunn, including the hostile work environment to which she was subjected and her termination.

79.     Corporate Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing, discriminatory and retaliatory conduct.

80.     The retaliatory actions taken against Dunn after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

81.     The discriminatory conduct of Corporate Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Dunn believe that the conditions of employment had been altered and that a hostile work environment existed.

### (ii)   Machikas

82.     Machikas was informed of her termination by George and MacKenzie. Machikas was told she was being laid off due to the economy.

83.     Dunn, who was Machikas' supervisor (along with MacKenzie), was not consulted and played no role in the decision to terminate Machikas.  If Dunn had been consulted, she would have objected.

84.     Corporate Defendants have failed to provide a legitimate, non-discriminatory or non-retaliatory reason for the termination of Machikas.

85.     In fact, the reason given to Machikas for her termination was false and pretextual because, *inter alia,* Machikas had been hired by Corporate Defendants five months before her termination, in the midst of a severe recession that was affecting the auto industry; nevertheless, Machikas' job responsibilities were expanding and increasing in the days and weeks leading up to her termination; MacKenzie did not want to terminate Machikas; and Machikas was told by a manager of Corporate Defendants (Dru Marks) on the day of her termination that he would be working with her in the future on an important assignment.

86.     Machikas's sex was a motivating and/or determinative factor in Corporate Defendants' discriminatory treatment of Machikas, including the hostile work environment to which she was subjected and her termination.

87.     Machikas's complaining of discrimination was a motivating and determinative factor in Corporate Defendants' retaliatory treatment of Machikas, including the hostile work environment to which she was subjected and her termination.

88.     Corporate Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of harassing, discriminatory and retaliatory conduct.

89.     The retaliatory actions taken against Machikas after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining of discrimination.

90.     The discriminatory conduct of Corporate Defendants, as alleged herein, was severe and/or pervasive enough to make a reasonable person believe that the conditions of employment had been altered and that a hostile work environment existed, and made Machikas believe that the conditions of employment had been altered and that a hostile work environment existed.

91.     Consistent with Corporate Defendants' discriminatory practices, attitudes and animus toward female employees, on or about November 3, 2008, Corporate Defendants also terminated Laura Barness, a co-worker of Plaintiffs at MBFW.  By terminating Plaintiffs and Barness on the same day, Corporate Defendants were able to eliminate from their workforce the only three women who worked on the floor at MBFW.

**G.     Damages Suffered by Plaintiffs**

92.     As a direct and proximate result of all Defendants' discriminatory and retaliatory acts and practices, Dunn has suffered and will suffer a loss of earnings, diminution of earning capacity, loss of employee benefits, pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life, the full extent of which is not know at this time.

93.     As a direct and proximate result of all Defendants' discriminatory and retaliatory acts and practices, Machikas has suffered and will suffer a loss of earnings, diminution of earning capacity, loss of employee benefits, pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life, the full extent of which is not know at this time.

94.     Corporate Defendants' discriminatory and retaliatory conduct was sufficiently outrageous and egregious to warrant an award of punitive damages in favor of Plaintiffs.

## COUNT I – TITLE VII

## PLAINTIFF DUNN V. CORPORATE DEFENDANTS

95.     Dunn incorporates by reference paragraphs 1 through 94, above, as if set forth fully and at length herein.

96.     The said acts, conduct and statements of Corporate Defendants caused Dunn to suffer discrimination on the basis of her sex in violation of Title VII.

97.     The said acts, conduct and statements of Corporate Defendants caused Dunn to be subjected to sexual harassment in violation of Title VII.

98.     The said acts, conduct and statements of Corporate Defendants caused Dunn to be subjected to a hostile and abusive work environment in violation of Title VII.

99.     The said acts, conduct and statements of Corporate Defendants caused Dunn to be retaliated against in violation of Title VII.

100.    Corporate Defendants terminated Dunn's employment because of her sex and in retaliation for her opposition to Corporate Defendants' discriminatory acts and practices; and her said termination was therefore in further violation of Title VII.

101.   Corporate Defendants' violations of Title VII were intentional, malicious and/or committed with reckless indifference to Dunn's rights, thereby entitling Dunn to an award of punitive damages.

102.   As a direct and proximate result of Corporate Defendants' violations of Title VII, Dunn has suffered and will suffer those damages and losses set forth herein and has incurred attorneys' fees and costs.

103.   As a direct and proximate result of Corporate Defendants' violations of Title VII, Dunn has suffered and will suffer irreparable harm, as a result of which Dunn is entitled to equitable and/or injunctive relief.

104.   No previous application has been made for the relief requested herein by Dunn.

## COUNT II – PHRA

## PLAINTIFF DUNN V. CORPORATE DEFENDANTS

105.   Dunn incorporates by reference paragraphs 1 through 104, above, as if set forth fully and at length herein.

106.   The said acts, conduct and statements of Corporate Defendants caused Dunn to suffer discrimination on the basis of her sex in violation of the PHRA.

107.   The said acts, conduct and statements of Corporate Defendants caused Dunn to be subjected to sexual harassment in violation of the PHRA.

108.   The said acts, conduct and statements of Corporate Defendants caused Dunn to be subjected to a hostile and abusive work environment in violation of the PHRA.

109. The said acts, conduct and statements of Corporate Defendants caused Dunn to be retaliated against in violation of the PHRA.

110. Corporate Defendants terminated Dunn's employment because of her sex and in retaliation for her opposition to Defendants' discriminatory acts and practices; and her said termination was therefore in further violation of the PHRA.

111. As a direct and proximate result of Corporate Defendants' violations of the PHRA, Dunn has suffered and will suffer those damages and losses set forth herein and has incurred attorneys' fees and costs.

112. As a direct and proximate result of Corporate Defendants' violations of the PHRA, Dunn has suffered and will suffer irreparable harm, as a result of which Dunn is entitled to equitable and/or injunctive relief.

113. No previous application has been made for the relief requested herein by Dunn.

## COUNT III – PHRA

## PLAINTIFF DUNN V. DEFENDANT SILVERIO

114. Dunn incorporates by reference paragraphs 1 through 113, above, as if set forth fully and at length herein.

115. Defendant Silverio aided and abetted the commission by Corporate Defendants of the discriminatory and retaliatory termination of Dunn's employment.

116. Defendant Silverio participated in and/or compelled the decision by Corporate Defendants to terminate Dunn's employment in violation of the PHRA.

117. Defendant Silverio is therefore personally liable to Dunn under the PHRA.

118.   As a direct and proximate result of Defendant Silverio's violations of the PHRA, Dunn has suffered and will suffer those damages and losses set forth herein.

119.   As a direct and proximate result of Defendant's Silverio's violation of the PHRA, Dunn has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

120.   As a direct and proximate result of Defendant Silverio's violations of the PHRA, Dunn has suffered and will suffer irreparable harm, as a result of which Dunn is entitled to equitable and/or injunctive relief.

121.   No previous application has been made for the relief requested herein by Dunn.

## COUNT IV – PHRA

## PLAINTIFF DUNN V. DEFENDANT PETRUZZIELLO

122.   Dunn incorporates by reference paragraphs 1 through 121, above, as if set forth fully and at length herein.

123.   Defendant Petruzziello aided and abetted the commission by Corporate Defendants of the discriminatory and retaliatory termination of Dunn's employment.

124.   Defendant Petruzziello participated in and/or compelled the decision by Corporate to terminate Dunn's employment in violation of the PHRA.

125.   Defendant Petruzziello is therefore personally liable to Dunn under the PHRA.

126.   As a direct and proximate result of Defendant Petruzziello's violations of the PHRA, Dunn has suffered and will suffer those damages and losses set forth herein.

127.   As a direct and proximate result of Defendant Petruzziello's violations of the PHRA, Dunn has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

128.   As a direct and proximate result of Defendant Petruzziello's violations of the PHRA, Dunn has suffered and will suffer irreparable harm, as a result of which Dunn is entitled to equitable and/or injunctive relief.

129.   No previous application has been made for the relief requested herein by Dunn.

### RELIEF SOUGHT BY PLAINTIFF DUNN

WHEREFORE, Plaintiff Dunn prays that the Court grant her the following relief to remedy Defendants' violations of Title VII and the PHRA;

(a)    Declaring the acts and practices of Corporate Defendants complained of herein to be in violation of Title VII;

(b)    Declaring the acts and practices of all Defendants complained of herein to be in violation of the PHRA;

(c)    Enjoining and permanently restraining the violations by Corporate Defendants of Title VII, and the violations by all Defendants of the PHRA;

(d)    Awarding economic compensatory damages to Dunn under Title VII and the PHRA to make Dunn whole, in the form of back pay, front or prospective pay, past and future lost earnings and/or diminution of earning capacity, and the value of past and future lost employee benefits;

(e)    Awarding non-economic compensatory damages to Dunn under Title VII and the PHRA for past and future pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life;

(f)    Awarding punitive damages to Dunn under  Title VII;

(g)    Awarding such other damages to Dunn as are appropriate and recoverable under Title VII and the PHRA;

(h)    Awarding pre-judgment interest to Dunn;

(i)    Awarding Dunn reasonable attorney's fees, costs of suit, and expert fees; and

(j)    Granting such other and further relief to Dunn as the Court may deem just, proper and equitable.

## COUNT V – TITLE VII

## PLAINTIFF MACHIKAS V. CORPORATE DEFENDANTS

130.   Machikas incorporates by reference paragraphs 1 through 129, above, as if set forth fully and at length herein.

131.   The said acts, conduct and statements of Corporate Defendants caused Machikas to suffer discrimination on the basis of her sex in violation of Title VII.

132.   The said acts, conduct and statements of Corporate Defendants caused Machikas to be subjected to sexual harassment in violation of Title VII.

133.   The said acts, conduct and statements of Corporate Defendants caused Machikas to be subjected to a hostile and abusive work environment in violation of Title VII.

134.   The said acts, conduct and statements of Corporate Defendants caused Machikas to be retaliated against in violation of Title VII.

135.   Corporate Defendants terminated Machikas's employment because of her sex and in retaliation for her opposition to Defendants' discriminatory acts and practices; and her said termination was therefore in further violation of Title VII.

136.   Corporate Defendants' violations of Title VII were intentional, malicious and/or committed with reckless indifference to Machikas rights, thereby entitling Machikas to an award of punitive damages.

137.   As a direct and proximate result of Corporate Defendants' violations of Title VII, Machikas has suffered and will suffer those damages and losses set forth herein.

138.   As a direct and proximate result of Corporate Defendants' violations of Title VII, Machikas has suffered and will suffer irreparable harm, as a result of which Machikas is entitled to equitable and/or injunctive relief.

139.   No previous application has been made for the relief requested herein by Machikas.

## COUNT VI – PHRA

### PLAINTIFF MACHIKAS V. CORPORATE DEFENDANTS

140.   Machikas incorporates by reference paragraphs 1 through 139, above, as if set forth fully and at length herein.

141.   The said acts, conduct and statements of Corporate Defendants caused Machikas to suffer discrimination on the basis of her sex in violation of the PHRA.

142.   The said acts, conduct and statements of Corporate Defendants caused Machikas to be subjected to sexual harassment in violation of the PHRA.

143.   The said acts, conduct and statements of Corporate Defendants caused Machikas to be subjected to a hostile and abusive work environment in violation of the PHRA.

144.   The said acts, conduct and statements of Corporate Defendants caused Machikas to be retaliated against in violation of the PHRA.

145.   Corporate Defendants terminated Machikas's employment because of her sex and in retaliation for her opposition to Defendants' discriminatory acts and practices; and her said termination was therefore in further violation of the PHRA.

146.   As a direct and proximate result of Corporate Defendants' violations of the PHRA, Machikas has suffered and will suffer those damages and losses set forth herein.

147.   As a direct and proximate result of Corporate Defendants' violations of the PHRA, Machikas has suffered and will suffer irreparable harm, as a result of which Machikas is entitled to equitable and/or injunctive relief.

148.   No previous application has been made for the relief requested herein by Machikas.

<u>**COUNT VII – PHRA**</u>

<u>**PLAINTIFF MACHIKAS V. DEFENDANT SILVERIO**</u>

149.   Machikas incorporates by reference paragraphs 1 through 148, above, as if set forth fully and at length herein.

150.   Defendant Silverio aided and abetted the commission by Corporate Defendants of the discriminatory and retaliatory termination of Machikas's employment.

151.   Defendant Silverio participated in and/or compelled the decision by Corporate Defendants to terminate Machikas's employment in violation of the PHRA.

152.   Defendant Silverio is therefore personally liable to Machikas under the PHRA.

153.   As a direct and proximate result of Defendant Silverio's violations of the PHRA Machikas has suffered and will suffer those damages and losses set forth herein.

154.   As a direct and proximate result of Defendant Silverio's violations of the PHRA, Machikas has suffered and will suffer irreparable harm, as a result of which Machikas is entitled to appropriate equitable and/or injunctive relief.

155.   No previous application has been made for the relief requested herein by Machikas.

## RELIEF SOUGHT BY PLAINTIFF MACHIKAS

WHEREFORE, Plaintiff Machikas prays that the Court grant her the following relief to remedy Defendants' violations of Title VII and the PHRA;

(a)   Declaring the acts and practices of Corporate Defendants complained of herein to be in violation of Title VII;

(b)   Declaring the acts and practices of all Defendants complained of herein to be in violation of the PHRA;

(c)   Enjoining and permanently restraining the violations by Corporate Defendants of Title VII, and the violations by all Defendants of the PHRA;

(d)    Awarding economic compensatory damages to Machikas under Title VII and the PHRA to make Machikas whole, in the form of back pay, front or prospective pay, past and future lost earnings and/or diminution of earning capacity, and the value of past and future lost employee benefits;

(e)    Awarding non-economic compensatory damages to Machikas under Title VII and the PHRA for past and future pain and suffering, mental anguish, emotional distress, embarrassment, humiliation, inconvenience, and loss of enjoyment of life;

(f)    Awarding punitive damages to Machikas under  Title VII;

(g)    Awarding such other damages to Machikas as are appropriate and recoverable under Title VII and the PHRA;

(h)    Awarding pre-judgment interest to Machikas;

(i)    Awarding Machikas reasonable attorney's fees, costs of suit, and expert fees; and

(j)     Granting such other and further relief to Machikas as the Court may deem just, proper and equitable.

CONSOLE LAW OFFICES LLC

By: _____
Stephen G. Console, Esquire / Caren N. Gurmankin
1525 Locust Street, Ninth Floor      (205900)
Philadelphia, PA   19102
(215) 545-7676

Attorney for Plaintiff Regina Dunn


SIDKOFF, PINCUS & GREEN, P.C.

By: _____
Robert A. Davitch
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600

Attorney for Plaintiff Patrice Machikas


Dated: _____4/14/10_____

# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

### COMPLAINT

COMPLAINANT:                                    :
                                                :
**REGINA DUNN**
                                                :
                                                :        Docket No. _____
        v.                                      :
                                                :
                                                :
RESPONDENTS:                                    :
                                                :
**CONDOR AUTOMOTIVE GROUP, LLC;**               :
**MERCEDES-BENZ OF FORT**                       :
**WASHINGTON;**                                 :
**STEVEN SILVERIO; AND,**                       :
**VINCENT PETRUZIELLO**                         :


1. The Complainant herein is:

    Name:       Regina Dunn

    Address:

                Maple Glen, Pa 19002

2. The Respondents herein are:

    Name:       Condor Automotive Group, LLC

                404 Pennsylvania Avenue

                Fort Washington, Pa 19333

and

Mercedes-Benz of Fort Washington

404 Pennsylvania Avenue

Fort Washington, Pa 19034

and

Steven Silverio

c/o Condor Automotive Group, LLC

404 Pennsylvania Avenue

Fort Washington, PA

and

Vincent Petruziello

c/o Condor Automotive Group, LLC

404 Pennsylvania Avenue

Fort Washington, PA

3.      I, <u>Regina Dunn</u>, the Complainant herein, allege that from through my employment and most recently on (but not limited to) November 4, 2008, the Respondents **discriminated against me** based on my: age (); **sex (xx)**; disability/perceived disability (xx); race (   ); and/or other (   ), and **retaliated against me for complaining about the same**, as set forth below:

**Discrimination and Retaliation**

   **A. I specifically allege:**

   [1]     I became employed by Respondents on or about October 3, 2007 in the position of General Sales Manager, reporting directly to Joseph Esposito (male), General Manager.  Mr. Esposito reported directly to Steve Silverio (male), Chief Operating Officer who reported to Carlos Hoz de Villa (male), Chief Executive Officer. During the course of my employment, I performed my duties in a highly competent manner.

   [2]     Respondents engaged in inappropriate and offensive comments and conduct which created a hostile work environment based on my sex.  Evidence of such conduct includes, but is not limited to, the following:

        (a)     Respondents failed to make a company-wide announcement regarding my hire.  Respondents announced the hires of Mr. Esposito, and Steven Niolu (male), Service Director, who commenced employment around the same time that I did;

        (b)     Mr. Silverio told me that Respondents did not want to tell people my title because people did not want to report to a woman;

        (c)     Mr. Silverio addressed me as "Suzie Cream Cheese,"

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF
FORT WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint
Page 4 of 9

    (d)    Mr. Silverio said that I was "a stupid fucking cunt who can't count,"

    (e)    Mr. Silverio referred to me as a "dumb fucking bitch;"

    (f)    Mr. Silverio often refused to communicate with me directly, but instead contacted my male direct reports with questions or issues, including Brad Bayard (male), who had been demoted from the General Sales Manager position shortly before I was hired;

    (g)    Mr. Silverio told Mr. Esposito that Respondents needed to replace me with a male because men don't respect me;

    (h)    Mr. Silverio spoke to Mr. Esposito and my colleagues about my body and my sexual prowess;

    (i)    Vincent Petruziello (male), Chief Financial Officer, repeatedly referred to me as a "bitch;"

    (j)    Mr. Petruziello cornered me in my office and called me a "fucking liar;"

    (k)    Mr. Silverio and Mr. Petruziello pushed Mr. Esposito to fire me;

    (l)    Mr. Silverio and Mr. Petruziello ignored my suggestions and recommendations;

    (m)    Mr. Silverio took a poll of my male direct reports, asking them whether they thought I was a "wild tiger" or a "cold fish" in bed;

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF
FORT WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint
Page 5 of 9

(n)   Mr. Silverio questioned my male direct reports about me, trying to have them confirm that I was a "bitch" and have them state that they could not work with me;

(o)   I was excluded from General Managers' meetings while my male counterparts were included and while a male subordinate of mine was invited to attend; and,

(p)   I complained to Mr. Esposito that I was not being paid in accordance with my bonus/commission plan that had been set upon my hire.  Mr. Esposito complained on my behalf to Mr. Silverio, who responded that I was a single mother with three children and had no place else to go.

[3]   In or about January 2008, Mr. Silverio began making late-night phone calls to me, some of which lasted two (2) or three (3) hours.  During those conversations, Mr. Silverio engaged in inappropriate conduct.  By way of example, he commented to me that I seemed happy and asked, "Did you get some [sex] this weekend?"

[4]   During those late-night phone conversations, Mr. Silverio also made it clear that he wanted to have sex with me;

[5]   On or about August 5, 2008, I sent a seven (7) page letter to Mr. Hoz de Villa in which I complained of the discrimination and hostile work environment based on sex to which I was subjected.

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF
FORT WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint
Page 6 of 9

[6]    Very shortly after Mr. Hoz de Villa received my letter, several
management-level employees at Respondents became aware of the letter and its
contents;

[7]    Mr. Hoz de Villa failed to respond to my letter.  His secretary contacted me
within a few days and told me that Respondents retained an attorney to investigate the
issues that I raised in my letter;

[8]    During my meeting with the attorney, he treated me in a very hostile
manner, including questioning my experience and whether or not I knew what my job
entailed.  I told the attorney to speak with other female employees who had been
subjected to harassment and discriminatory conduct.  The attorney failed to ask me
about some of my complaints that I had included in the letter to Mr. Hoz de Villa.

[9]    After I met with the attorney, Mr. Silverio contacted Mr. Esposito and
asked if I was going to sue the company.

[10]    Mr. Silverio told Mr. Esposito to "get the fucking cunt" to meet with him and
that Mr. Esposito needed to "fix this."

[11]    At Mr. Silverio's request, I met with him and Mr. Esposito.  During that
meeting, Mr. Silverio told me that I needed to "drop this business," that the "car
business is small" and that I would "never get another job."  Mr. Silverio also told me
that it's "tough enough" to be a woman in this business and that if I proceeded with my
complaints that I would be "hire proof."

[12]   Mr. Silverio said that he was sorry for his conduct and hugged me.

[13]   In or about September 2008, I met with Mr. Hoz de Villa and Pablo Zagarra, Vice President of Development.  In that meeting, which lasted approximately ten (10) minutes, I was told that Respondents had concluded their investigation, that they did not see anything "really inappropriate" and that Mr. Silverio "may have crossed the line a little" but that he would be more careful.

[14]   On or about October 6, 2008, Respondents terminated Mr. Esposito.  Mr. Esposito was told that the reason for his termination was that Respondents were "downsizing."  Very shortly after leaving the office, Mr. Esposito returned to retrieve some items and found his replacement, Paul MacKenzie (male), already in his office.

[15]   Shortly after Mr. Esposito was terminated, Mr. Silverio told me, "You are not protected anymore."

[16]   After Mr. Esposito's termination, both Mr. Silverio and Mr. MacKenzie failed to communicate with me regarding the business and decisions in which I should have been involved as the General Sales Manager.

[17]   On or about November 4, 2008, Respondents terminated my employment. Mr. Hoz de Villa told me that the reason for my termination was that Respondents were going to work with fewer managers and, as such, Mr. MacKenzie would was going to take over my position as General Sales Manager.

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF
FORT WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint
Page 8 of 9

[18]    Within a few hours of my termination, my (male) replacement, David
Reedman, was working in my office.

[19]    Respondents have not provided a legitimate, non-discriminatory reason
for the discrimination, retaliation and hostile work environment to which I was subjected.

[20]    Respondent Condor Automotive Group, LLC, has ineffective and/or
insufficient policies concerning discrimination and retaliation.

[21]    Respondent Mercedes-Benz of Fort Washington has ineffective and/or
insufficient policies concerning discrimination and retaliation.

[22]    Mr. Silverio and Mr. Petruziello aided and abetted the discrimination and
retaliation to which I was subjected.

B.      Based on the aforementioned, I allege that Respondents have harassed
and discriminated against me based on my sex and retaliated against me based on my
complaints about the same in violation of the Pennsylvania Human Relations Act, 43
P.S. §951, et seq. ("PHRA") and the Title VII of the Civil Rights Act of 1964, as
amended, 42 U.S.C. §2000e, et seq. ("Title VII"), including, without limitation, as set
forth herein.

4.    The allegations in paragraph 3 hereof constitute unlawful discriminatory practices
in violation of:

X     Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.
       744, as amended) Section 5 Subsection(s):   (a)

___    Section 5.1 Subsection(s)_____

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF
FORT WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint
Page 9 of 9

___    Section 5.2 Subsection(s)_____

___    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,
       P.L. 766 as amended).  Section 4 Subsection(s)

       _____

5.     Other action based on the aforesaid allegations has been instituted by the
Complainant in any court or before any other commission within the Commonwealth of
Pennsylvania as follows:

       **X   This charge will be referred to the EEOC for the purpose of dual filing.**

6.     The Complainant prays that the respondents be required to:

       (a)    Make the Complainant whole.
       (b)    Eliminate all unlawful discriminatory and retaliatory practice(s) and
              procedures(s).
       (c)    Remedy the discriminatory and retaliatory effect of past practice(s) and
              procedure(s).
       (d)    Take further affirmative action necessary and appropriate to remedy the
              violation complained of herein.
       (e)    Provide such further relief as the Commission deems necessary and
appropriate.

### <u>VERIFICATION</u>

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief.  I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

12 Dec 2008 _____   _Regina Dunn_____
(Date Signed)                    (Signature)  Regina Dunn

Maple Glen, PA 19002

# EXHIBIT 2

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

**AMENDED COMPLAINT**

COMPLAINANT:

**REGINA DUNN**

PHRC No.  200803061
EEOC No.  17F200960834

v.

RESPONDENTS:

**CONDOR AUTOMOTIVE GROUP, LLC;
MERCEDES-BENZ OF FORT
WASHINGTON;
STEVEN SILVERIO; AND,
VINCENT PETRUZIELLO**

1. The Complainant herein is:

    Name:    Regina Dunn

    Address:

        Maple Glen, Pa 19002

2. The Respondents herein are:

    Name:    Condor Automotive Group, LLC

        404 Pennsylvania Avenue

        Fort Washington, Pa 19333

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT
WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint - Page 2 of 7

and

Mercedes-Benz of Fort Washington

404 Pennsylvania Avenue

Fort Washington, Pa 19034

and

Steven Silverio

c/o Condor Automotive Group, LLC

404 Pennsylvania Avenue

Fort Washington, PA

and

Vincent Petruziello

c/o Condor Automotive Group, LLC

404 Pennsylvania Avenue

Fort Washington, PA

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT
WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint - Page 3 of 7

3.    I, <u>Regina Dunn</u>, the Complainant herein, allege that from through my

employment and up through the present, the Respondents **discriminated against me**

based on my: age (  ); **sex (xx)**; disability/perceived disability (  ); race (  ), and/or

other (  ), and **retaliated against me for complaining about the same**, as set forth

below:

<u>Discrimination and Retaliation</u>

   **A. I specifically allege:**

   [1]    I became employed by Respondents on or about October 3, 2007 in the

position of General Sales Manager, reporting directly to Joseph Esposito (male),

General Manager.  Mr. Esposito reported directly to Steve Silverio (male), Chief

Operating Officer who reported to Carlos Hoz de Villa (male), Chief Executive Officer.

During the course of my employment, I performed my duties in a highly competent

manner.

   [2]    I was terminated on or about November 4, 2008.

   [3]    On or about December 23, 2008, I filed a Complaint with the PHRC

alleging harassment and discrimination based on my sex and retaliation based on my

complaints of harassment and sex discriminatory conduct (a copy of that complaint was

sent to Respondents on that day).

   [4]    Since filing my Complaint, I have been subjected to additional

discriminatory and retaliatory conduct.

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT
WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint - Page 4 of 7

[5]     Starting in or about February 2009, I have received numerous calls from current employees of Respondents, representatives of Mercedes-Benz and employees of other dealerships that I have contacted for potential employment asking me to confirm whether what they had been told by Respondents was true, that I had stolen from Respondents and was terminated for the same.

[6]     Upon information and belief, Dru Marks, Used Car Director, who reports directly to Respondent Steven Silverio, has pressured current employees of Respondents to write statements saying that I stole from Respondents and was terminated for the same.

[7]     Respondents have not provided a legitimate, non-discriminatory reason for the discrimination and retaliation to which I continue to be subjected.

[8]     Respondent Condor Automotive Group, LLC has ineffective and/or insufficient policies concerning discrimination and retaliation.

[9]     Respondent Mercedes-Benz of Fort Washington has ineffective and/or insufficient policies concerning discrimination and retaliation.

[10]    Mr. Silverio and Mr. Petruziello aided and abetted the discrimination and retaliation to which I was subjected.

B.      Based on the aforementioned, I allege that Respondents have harassed and discriminated against me based on my sex and retaliated against me based on my complaints about the same in violation of the Pennsylvania Human Relations Act, 43 P.S. §951, et seq. ("PHRA") and the Title VII of the Civil Rights Act of 1964, as

**REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO**
**PHRC Complaint - Page 5 of 7**

amended, 42 U.S.C. §2000e, *et seq.* ("Title VII"), including, without limitation, as set forth herein.

4.    The allegations in paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

<u>X</u>    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s): <u>(a)</u>**

___    Section 5.1 Subsection(s)_____

___    Section 5.2 Subsection(s)_____

___    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766 as amended).  Section 4 Subsection(s)

_____

5.    Other action based on the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

<u>X</u>    **This charge will be referred to the EEOC for the purpose of dual filing.**

6.    The Complainant prays that the respondents be required to:

(a)    Make the Complainant whole.

(b)    Eliminate all unlawful discriminatory and retaliatory practice(s) and procedures(s).

(c)    Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d)    Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

REGINA DUNN v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT
WASHINGTON; STEVEN SILVERIO; AND, VINCENT PETRUZIELLO
PHRC Complaint - Page 6 of 7

    (e)    Provide such further relief as the Commission deems necessary and appropriate.

03/16/09

## VERIFICATION

I hereby verify that the statements contained in this First Amended Complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

13 March 2009

(Date Signed)

*Regina Dunn*

(Signature)   Regina Dunn

Maple Glen, PA 19002

# EXHIBIT 3

EEOC Form 161-B (11/09)

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  Regina Dunn

Maple Glen, PA  19002

From:

Equal Employment Opportunity Commission
Philadelphia District Office
801 Market Street, Suite 1300
Philadelphia, PA  19107-3127

RECEiVED

FEB 1 2010

Console Law Offices

| ☐ | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a)) | | |
|---|---|---|---|
| **Charge No** | **EEOC Representative** | | **Telephone No** |
| 17E-2009-60834 | Legal Unit | | (215) 440-2828 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED :

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA) or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost.** (The time limit for filing suit based on a state claim may be different.)

- [x] More than 180 days have passed since the filing of this charge
- [ ] Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge
- [x] The EEOC is terminating its processing of this charge
- [ ] The EEOC will continue to process this charge

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge  In this regard, the paragraph marked below applies to your case:

- [ ] The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice  Otherwise, your right to sue based on the above-numbered charge will be lost
- [ ] The EEOC is continuing its handling of your ADEA case  However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment  This means that backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office

On behalf of the Commission

*Phil A. Goldman*

Phil A. Goldman
Acting District Director

2/8/10

*(Date Mailed)*

Enclosure(s)

cc:  Condor Automotive Group
Caren N. Gurmankin, Esquire (For Charging Party)
Elizabeth F. Walker, Esquire (For Respondent)

# EXHIBIT 4

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

COMPLAINANT:                  :

**PATRICE MACHIKAS**       :

                         v.       :

RESPONDENTS:               :

**CONDOR AUTOMOTIVE GROUP, LLC;**  :
**MERCEDES-BENZ OF FORT**  :
**WASHINGTON; and**  :
**STEVEN SILVERIO**  :

DOCKET NO. _____

1.    The Complainant herein is:

      Name:    <u>Patrice Machikas</u>

      Address:

              <u>Glenmoore, PA  19343</u>

Received
Philadelphia Regional Office

JAN 1 5 2009

PA Human Relations Commission
Intake Department

2.    The Respondents herein are:

      Name:    <u>Condor Automotive Group, LLC</u>
                  <u>404 West Pennsylvania Avenue</u>
                  <u>Fort Washington, PA 19034</u>

                and

                <u>Mercedes-Benz of Fort Washington</u>
                <u>404 West Pennsylvania Avenue</u>
                <u>Fort Washington, PA 19034</u>

                and

                <u>Steven Silverio</u>
                <u>c/o Condor Automotive Group, LLC</u>
                <u>404 West Pennsylvania Avenue</u>
                <u>Fort Washington, PA 19034</u>

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ
OF FORT WASHINGTON; AND STEVEN SILVERIO;
PHRC Complaint
Page 2 of 9**

3.      I, <u>Patrice Machikas</u>, the Complainant herein, allege that through my employment and most recently on or about November 3, 2008, the Respondents discriminated against me based on my sex and retaliated against me for complaining about the same, as set forth below.

<u>**Discrimination and Retaliation**</u>

    **A.      <u>I specifically allege</u>:**

    [1]     I became employed by Respondents on or about June 2, 2008, as a Customer Relations manager/specialist.  My employment was terminated on or about November 3, 2008.

    [2]     Throughout the course of my employment, I reported to Regina Dunn (female), General Sales Manager for Mercedes-Benz of Fort Washington.  From the time I was hired until on or about October 6, 2008, I also reported to Joseph Esposito (male), General Manager of Mercedes-Benz of Fort Washington.  Mr. Esposito was terminated by Respondents on or about October 6, 2008, and was replaced by Paul Mackenzie (male).  From on or about October 6, 2008 until the time of my termination, I reported to Ms. Dunn and Mr. Mackenzie.

    [3]     Throughout the course of my employment, I performed my job duties in a highly competent manner.

    [4]     Beginning on or about July 15, 2008, and continuing until on or about July 18, 2008, I was subjected to inappropriate and offensive comments and conduct by

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ
OF FORT WASHINGTON; AND STEVEN SILVERIO;
PHRC Complaint
Page 3 of 9**

Steven Silverio (male), Chief Operating Officer for Condor Automotive Group, which resulted in sexual harassment and created a hostile work environment based upon my sex.  Mr. Esposito reported to Mr. Silverio; and Mr. Silverio engaged in this improper conduct while Mr. Esposito was away on vacation.

[5]    Mr. Silverio's improper comments and conduct included, but were not limited to, the following:

(a)    Mr. Silverio told me that he was totally opposed to hiring me, that it was a mistake to hire me, and that I was serving no purpose.  Mr. Silverio made these comments even though my supervisors, Ms. Dunn and Mr. Esposito, had commended me for the job I was doing, my job responsibilities were increasing, and Carlos Hoz de Villa (male), Chief Executive Officer for Condor Automotive Group, had recently told me that he was "very glad" I was on board;

(b)    Mr. Silverio told me, repeatedly, that I should be "grateful" or "extremely grateful" to him for my job and because he was spending money to train me; and he asked me how I was going to show my gratitude.  Based upon Mr. Silverio's tone, demeanor and body language, and in the context of the other statements he made to me, I took his remarks to mean that if I agreed to perform a sexual favor for him and/or to go out with him socially, my job would be safe;

(c)    Mr. Silverio stood directly behind me while I was sitting at my desk in front of my computer, virtually pinning me to my desk with no means of escape.  In

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT WASHINGTON; AND STEVEN SILVERIO;**
**PHRC Complaint**
**Page 4 of 9**

the context of the inappropriate remarks he made to me, I felt very threatened and intimidated by this; and

        (d)    Mr. Silverio referred to me as a "glorified part-time secretary" – even though my job responsibilities were significantly greater than that.

[6]    During the week of July 15, 2008, I complained to my supervisor, Ms. Dunn, about Mr. Silverio's improper comments and conduct. I told Ms. Dunn, among other things, that I felt I had been sexually harassed and believed that if I agreed to perform a sexual favor for Mr. Silverio or go out with him socially, I would be able to keep my job.

[7]    Upon Mr. Esposito's return from vacation on or about July 21, 2008, I complained to him about what Mr. Silverio had done and said to me during the previous week. I told Mr. Esposito that I felt I had been sexually harassed by Mr. Silverio.

[8]    On or about July 22, 2008, I sent Mr. Esposito an e-mail in which I listed some of the inappropriate comments and conduct to which I had been subjected by Mr. Silverio. I stated in the e-mail that although I "truly love my job and am pleased to have this opportunity...I could not tolerate working anywhere I was treated in the manner [Mr. Silverio] treated me last week".

[9]    In or about July of 2008, Mr. Esposito reported my complaints regarding Mr. Silverio to Joanne George (female), Human Resources Director, and he gave Ms.

PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ
OF FORT WASHINGTON; AND STEVEN SILVERIO;
PHRC Complaint
Page 5 of 9

George a copy of my July 22, 2008 e-mail. In addition, Mr. Esposito told Ms. George that there was a serious problem involving Mr. Silverio.

[10]   In or about July of 2008, Mr. Esposito confronted Mr. Silverio with my complaint of sexual harassment, and he told Mr. Silverio why I felt that I had been sexually harassed by him. Mr. Silverio told Mr. Esposito that this was "bullshit", and he questioned Mr. Esposito as to why issues such as mine only happened in Mr. Esposito's store.

[11]   On or about August 5, 2008, Ms. Dunn sent a letter to Mr. Hoz de Villa in which she complained that she had been discriminated against and subjected to a hostile work environment based upon the conduct and comments of Mr. Silverio and others. In her letter, Ms. Dunn mentioned my complaint about Mr. Silverio, stating that Mr. Silverio had left me with the impression that he could be assuaged if I were willing to become involved with him socially.

[12]   In or about August of 2008, Respondents retained an attorney to investigate the issues raised in Ms. Dunn's letter to Mr. Hoz de Villa. When she met with the attorney, Ms. Dunn encouraged the attorney to speak to other female employees who claimed they had been sexually harassed and discriminated against, including me.

[13]   However, the attorney did not meet with or speak to me regarding my complaint.

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT WASHINGTON; AND STEVEN SILVERIO;**
**PHRC Complaint**
**Page 6 of 9**

[14]   Moreover, in or about August of 2008, Vincent Petruziello (male), Chief Financial Officer, told Mr. Esposito that the investigation for which Respondents had hired the attorney would **not** include or be extended to my complaint.  In fact, prior to my termination, my complaint was **not** investigated after I had reported Mr. Silverio to my supervisors (Ms. Dunn and Mr. Esposito).

[15]   As noted above, Mr. Esposito was terminated by Respondents on or about October 6, 2008, and replaced by Mr. Mackenzie.

[16]   On or about November 3, 2008, Respondents terminated my employment. I was advised of my termination by Ms. George and Mr. Mackenzie, in a brief meeting.  I was told that I was being laid off due to the hard economic times.

[17]   Ms. Dunn was terminated the same day I was.  She was not consulted nor did she participate in the decision to terminate me.

[18]   Respondents have not provided a legitimate, non-discriminatory reason for my termination.  I contend that the reasons I was given are pretexts for discrimination and retaliation, for the following reasons:

(a)   I was hired by the Respondents only five months before my termination (on or about June 2, 2008), during a recession and a downturn in the economy;

(b)   Nevertheless, my job responsibilities were expanding and increasing in the days and weeks leading up to my termination;

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ OF FORT WASHINGTON; AND STEVEN SILVERIO;**
**PHRC Complaint**
**Page 7 of 9**

(c)    On the day of my termination, I was told by Dru Marks, Used Car Director, that he and I would be working together in the future on an important assignment and that my help was needed;

(d)    At or about the time of my termination, Kirstie Thomas (female) was assigned to my store (Mercedes-Benz of Fort Washington).   Ms. Thomas' salary and benefits were greater than mine;

(e)    Shortly after I was terminated, Mr. Mackenzie told the sales team that I had been a tremendous help to the organization and that he wanted to hire me back;

(f)    The timing of my termination, in relation to the reports Respondents received of my complaints of discrimination and harassment, was suspicious;

(g)    Respondents terminated Ms. Dunn and Mr. Esposito after they had complained about and opposed Respondents' discriminatory employment practices, including those that affected me;

(h)    Before they were terminated, Respondents and Mr. Silverio threatened to terminate Ms. Dunn and Mr. Esposito because they had dared to report and complain about Respondents' discriminatory employment practices;

(i)    Respondents employ disproportionately few women as compared to men; and

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ
OF FORT WASHINGTON; AND STEVEN SILVERIO;
PHRC Complaint
Page 8 of 9**

(j)      On or about November 3, 2008, Respondents terminated the only three females who worked on the floor at my store: Ms. Dunn, Laura Burness and myself.  The only male who was terminated at or around that time, Brian Szaz, had serious performance issues.  In fact, before Mr. Esposito was terminated, he wanted to terminate Mr. Szaz due to his poor performance but Mr. Silverio had prevented that from happening.

[19]   Respondents have ineffective and/or insufficient policies concerning sexual harassment, discrimination and retaliation.

[20]   Mr. Silverio aided and abetted the discrimination and retaliation to which I was subjected.

**B.**      Based upon the foregoing, I allege that the Respondents harassed and discriminated against me based on my sex and retaliated against me based on my complaints regarding the same, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.* (PHRA) and Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), including, without limitation, as set forth above.

4.      The allegations of paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

    **X__   Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):  (a)**

    ____   Section 5.1 Subsection(s) _____

**PATRICE MACHIKAS v. CONDOR AUTOMOTIVE GROUP, LLC; MERCEDES-BENZ
OF FORT WASHINGTON; AND STEVEN SILVERIO;
PHRC Complaint
Page 9 of 9**

_____   Section 5.2 Subsection(s) _____

_____   Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,
        P.L. 766 as amended).  Section 4 Subsection(s)

5.      Other action based on the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

        __X__   **This charge will be referred to the EEOC for the purpose of dual
                filing.**

6.      The Complainant prays that the Respondents be required to:

        (a)     Make the Complainant whole.

        (b)     Eliminate all unlawful discriminatory and retaliatory practices and
                procedures.

        (c)     Remedy the discriminatory and retaliatory effect of past practices and
                procedures.

        (d)     Take further affirmative action as necessary and appropriate to remedy
                the violations complained of herein.

        (e)     Provide such further relief as the Commission deems necessary and
                appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief.  I understand that false statements herein are made subject to the penalties of 18 P.A.C.A Section 4904, relating to unsworn falsification to authorities.

PATRICE MACHIKAS

Glenmoore, PA  19343

Dated: 1 - 13 - 2009

# EXHIBIT 5

EEOC Form 161-B (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To: Patricia Machikas<br><br>Glenmoore, PA 19343 | From: Equal Employment Opportunity Commission<br>Philadelphia District Office<br>801 Market Street, Suite 1300<br>Philadelphia, PA 19107-3127 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR § 1601 7(a))

| Charge No | EEOC Representative | Telephone No |
|---|---|---|
| 17E-2009-61029 | Legal Unit | (215) 440-2828 |

*(See also the additional information attached to this form)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA) or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge  It has been issued at your request  Your lawsuit under Title VII or the ADA  **must be filed in federal or state court <u>WITHIN 90 DAYS</u>** of your receipt of this Notice. Otherwise, your right to sue based on this  charge will be lost  (The time limit for filing suit based on a state claim may be different )

☒ More than 180 days have passed since the filing of this charge

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge  In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case  Therefore, your lawsuit under the ADEA **must be filed in federal or state court <u>WITHIN 90 DAYS</u> of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost

☐ The EEOC is continuing its handling of your ADEA case  However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required )  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u>** before you file suit may not be collectible

If you file suit based on this charge, please send a copy of your court complaint to this office

On behalf of the Commission

*Phil A. Goldman*                                        2/16/10

Phil A. Goldman                                        *(Date Mailed)*
Acting District Director

Enclosure(s)

cc: Condor Automotive Group
Robert A. Davitch, Esquire  (For Charging Party)
Elizabeth F. Walker, Esquire (For Respondent)