IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| | : | |
| REGINA DUNN and PATRICE MACHIKAS, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-1662 |
| | : | |
| MERCEDES BENZ OF FT. WASHINGTON, INC. *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                       February 9, 2012

Plaintiffs, Regina Dunn and Patrice Machikas, former employees of Mercedes-Benz of

Fort Washington, Inc., and Condor Automotive Group, LLC (collectively, the "corporate

defendants"), filed this action against the corporate defendants, as well as Stephen Silverio and

Vincent Petruzziello, the chief operating officer and chief financial officer, respectively, of the

corporate defendants, alleging sex discrimination, sexual harassment, a hostile work

environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e

*et seq.*, and the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. Stat. Ann. §§ 951 *et*

*seq.*

Dunn has now filed a motion for partial summary judgment against the corporate

defendants as to her claims that the corporate defendants terminated her employment because of

her sex and in retaliation for her having complained of discrimination, sexual harassment, and a

hostile work environment, in violation of Title VII and the PHRA. She contends that she is

entitled to summary judgment on these claims because she has established a prima facie case of

discrimination (and retaliation) as a matter of law and because, as a sanction for the corporate

defendants' alleged spoliation of evidence, the corporate defendants should be precluded from

asserting a legitimate, nondiscriminatory (or nonretaliatory) reason for her termination. Because I

cannot conclude that such a sanction is justified in this case, I will deny her motion for partial

summary judgment.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

Dunn began working as the general sales manager at the corporate defendants' Fort

Washington Mercedes-Benz dealership on October 3, 2007. (Pl. Regina Dunn's Statement of

Undisputed Facts ("Dunn's Facts") ¶ 2.)

In a letter dated August 5, 2008, to Carlos Hoz de Vila, the corporate defendants' chief

executive officer, Dunn complained of discrimination, sexual harassment, and a hostile and

abusive work environment.[2] (*See* Pl. Regina Dunn's Mot. for Partial Summ. J. ("Dunn's Mot. for

Summ. J.") Ex. H.)

---

[1] Because Dunn's motion for summary judgment is based largely on her contention that the corporate defendants destroyed certain relevant evidence, and because, as discussed below, I need not determine here whether Dunn has established a prima facie case of discrimination (or retaliation), I summarize only those facts relevant to her spoliation claim. Except as otherwise noted, the following facts are undisputed.

[2] Dunn's letter was written in response to a meeting with Hoz de Vila; Silverio; and Joe Esposito, the general manager at the Fort Washington dealership and the person to whom Dunn directly reported. At that meeting, Dunn was reportedly told that if she "did not hit an objective by the end of the month, [she] would be fired." (Pl. Regina Dunn's Mot. for Partial Summ. J. Ex. H at 1.) Hoz de Vila reportedly told Dunn that she would be given the resources she needed in order to succeed, and although Dunn believed that "this offer from [Hoz de Vila] was genuine," she wrote this letter because she also believed that "there [were] extraordinary obstacles that [had] been placed in [her] way, of which [Hoz de Vila was] unaware." (*Id.*)

Two months later, on October 6, 2008, the corporate defendants terminated Joe Esposito, the general manager of the Fort Washington dealership and the person to whom Dunn directly reported, and hired Paul Mackenzie in his place. (Dunn's Facts ¶¶ 3–5.) Soon after Mackenzie assumed the role of general manager, he decided to terminate Dunn, and he sought permission from Silverio to do so. (Dunn's Facts ¶¶ 32–34; Defs.' Counterstatement of Facts ¶¶ 32–34.) After a meeting with Hoz de Vila, Petruzziello, and Silverio, during which legal counsel was consulted in light of Dunn's earlier complaint, Mackenzie was given permission to terminate Dunn (Defs.' Counterstatement of Facts ¶ 34), and Dunn was terminated on November 4, 2008 (Dunn's Facts ¶ 20).

Dunn filed a complaint with the Pennsylvania Human Relations Commission (the "PHRC"), and cross-filed it with the Equal Employment Opportunity Commission (the "EEOC"), on December 23, 2008, complaining of discrimination and retaliation by defendants.[3] (Compl. ¶ 12, Ex. 1.) Defendants were served by the PHRC with a copy of the complaint on January 16, 2009. (Dunn's Facts ¶ 42.)

After receiving a right-to-sue notice from the EEOC, Dunn filed this action on April 14, 2010, alleging sex discrimination, sexual harassment, a hostile and abusive work environment, and retaliation in violation of Title VII and the PHRA.

During discovery, Dunn's counsel deposed Mackenzie, who defendants asserted was "the decision maker" regarding Dunn's termination (Dunn's Mot. for Summ. J. Ex. O ¶ 17). McKenzie testified that, at the time of Dunn's termination, he had not prepared any documentation outlining the reasons for terminating her. (Mem. of Law in Opp'n to Pl. Regina

---

[3] Dunn filed an amended PHRC complaint on March 16, 2009, and cross-filed it with the EEOC. (Compl. ¶ 13, Ex. 2.)

Dunn's Mot. for Partial Summ. J. ("Defs.' Br.") Ex. H at 140:11–16; Dunn's Mot. for Summ. J. Ex. F at 190:13–191:11.) But he testified that, about a year after Dunn was terminated, he had prepared a document entitled "Regina Dunn and Andrew Mogilyansky,"[4] in which he summarized some of his interactions with Dunn and the events leading up to her termination. (*See* Dunn's Mot. for Summ. J. Ex. F at 7:10–8:18, 166:23–167:22; *id.* Ex. R.) He explained that he had prepared this document on his computer at work (*id.* Ex. F at 14:19–21) and that in preparing this document he had relied on his memory as well as contemporaneous notes of work-related events that he kept on his work computer in a file called "Miscellaneous" (*id.* at 10:11–12:18, 226:5–228:6).

In the course of discovery, the corporate defendants produced the document entitled "Regina Dunn and Andrew Mogilyansky," which Mackenzie had e-mailed, along with other documents, to human resources for inclusion in his "employee record." (*See* Dunn's Mot. for Summ. J. Ex. Q no. 61; *id.* Ex. S.) And in response to a subpoena, Mackenzie also produced this document. (*See id.* Ex. F at 6:11–8:12.) He testified that he obtained the document from his personal home computer—he explained that although he had prepared the document at work, he had e-mailed a copy to himself at home. (*Id.* at 8:19–9:4, 14:19–15:1.) But neither Mackenzie nor the corporate defendants have produced a copy of the notes that Mackenzie referred to in his deposition. Mackenzie testified that he thought that he had also e-mailed a copy of his notes to himself at home but that he was unable to find the notes on his home computer. (*Id.* at 12:19–13:3.) He speculated that he might have deleted them from his personal computer to make room for other files or that he might have been mistaken about having sent the notes to himself.

---

[4] Mogilyansky is not a party to this action.

(*Id.* at 13:4–14:13.) Mackenzie further testified that in March 2010, about ten days after he was fired by the corporate defendants, he sought to retrieve some personal information that he had left on his work computer but was told by James Bell, the corporate defendants' information technology ("IT") manager, that there was "nothing left" on his computer at work—which he understood to mean that his hard drive had been erased. (*Id.* at 15:6–16:22.) At his deposition, however, Bell did not recall having such a conversation with Mackenzie. (Defs.' Br. Ex. I at 72:2–14.) And when asked whether he had deleted information from Mackenzie's hard drive or checked to see if any information remained on the hard drive, he responded, "Not to my knowledge." (*Id.* at 71:23–72:20.) He similarly testified that he could not remember whether Mackenzie's e-mail account was deleted after Mackenzie was terminated. He testified that "[i]t's quite possible that account might still be there" and that he did not recall anyone asking him to check whether Mackenzie's account still existed. (*Id.* at 69:13–71:12.)

After discovery, Dunn filed this motion for partial summary judgment against the corporate defendants as to her claims of discrimination and retaliation, arguing that the corporate defendants intentionally destroyed the documents on Mackenzie's work computer, including the "Miscellaneous" file containing his notes, and that as a sanction for such spoliation of evidence, the corporate defendants should be precluded from asserting a legitimate, nondiscriminatory (or nonretaliatory) reason for her termination.

Although the corporate defendants reportedly "thought that they had secured and produced all documents responsive to Plaintiffs' requests and supplemental requests through discovery," in light of Bell's deposition testimony, they "looked again" to determine whether Mackenzie's e-mail account had been retained. (Defs.' Answer in Opp'n to Pls.' Mot. to Compel

Produc. of All Docs. Contained in the "My Documents" Directory for Paul Mackenzie ("Defs.'

Opp'n to Mot. to Compel") ¶¶ 4–5.) In the course of looking for the e-mail account, they

apparently located Mackenzie's "My Documents" folder (*id.* ¶ 5), and in their brief opposing

Dunn's motion for summary judgment, the corporate defendants asserted that "[a]s of the writing

of this brief, a file entitled P Mackenzie My Documents has been located and the information

contained therein is being copie[d] and reviewed" (Defs.' Br. at 17). They continued, "It may be

that the document has, in fact not been destroyed but will be available." (*Id.*)

In light of this assertion, while Dunn's motion for summary judgment was pending,

plaintiffs filed a motion to compel production of the contents of this "My Documents" folder and

to obtain attorneys' fees and costs relating to the corporate defendants' failure to produce

documents. After reviewing the contents of the folder, the corporate defendants' counsel

represented that there were no documents in the folder responsive to plaintiffs' discovery

requests that had not previously been produced. (Defs.' Opp'n to Mot. to Compel ¶ 6.) I ordered

counsel to prepare a log of the documents in the "My Documents" folder that had not been

provided to plaintiffs' counsel, but denied plaintiffs' request for attorneys' fees. *See* Order, Sept.

29, 2011 (document no. 68).

I turn now to Dunn's motion for partial summary judgment.

## II.    STANDARD OF REVIEW

A motion for summary judgment shall be granted "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). "Where the record taken as a whole could not lead a rational trier of fact to

find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv.*

*Co.*, 391 U.S. 253, 289 (1968)). To defeat a motion for summary judgment, the nonmoving party

must show more than "[t]he mere existence of a scintilla of evidence" for elements on which it

bears the burden of production, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and

may not "rely merely upon bare assertions, conclusory allegations or suspicions," *Fireman's Ins.*

*Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). By the same token, "it is inappropriate to

grant summary judgment in favor of a moving party who bears the burden of proof at trial unless

a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on

the law." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (footnote omitted). When evaluating a

motion for summary judgment, the court "is not to weigh the evidence or make credibility

determinations." *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224,

1230 (3d Cir. 1993). "The evidence of the nonmovant is to be believed, and all justifiable

inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

## III.   DISCUSSION

At issue here are Dunn's claims against the corporate defendants alleging that they

terminated her employment because of her sex and in retaliation for her having complained of

discrimination and sexual harassment, in violation of Title VII and the PHRA.

Courts generally analyze Title VII and PHRA discrimination and retaliation claims such

as Dunn's under the burden-shifting framework established in *McDonnell Douglas Corp. v.*

*Green*, 411 U.S. 792 (1973). *See Moore v. City of Philadelphia*, 461 F.3d 331, 340–41 (3d Cir.

2006); *Atkinson v. Lafayette Coll.*, 460 F.3d 447, 454 & n.6 (3d Cir. 2006). A plaintiff must first

establish a prima facie case of discrimination, or retaliation, as the case may be. *See Atkinson*,

460 F.3d at 454. If the plaintiff establishes a prima facie case, the burden shifts to the defendant

to articulate a legitimate, nondiscriminatory (or nonretaliatory) reason for its conduct, and if it

does so, the burden shifts back to the plaintiff to prove that the proffered explanation is merely a

pretext for discrimination (or retaliation). *See id.* Because establishment of a prima facie case

under the *McDonnell Douglas* framework "'in effect creates a presumption that the [defendant]

unlawfully discriminated against the [plaintiff],'" *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502,

506 (1993) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981)), where the

plaintiff establishes a prima facie case but the defendant has failed to introduce evidence of a

legitimate, nondiscriminatory (or nonretaliatory) reason for its conduct, the plaintiff is entitled to

judgment as a matter of law, *id.* at 509.

 Here, Dunn contends that she is entitled to summary judgment because she has

established a prima facie case as a matter of law and because, as a sanction for the corporate

defendants' alleged spoliation of evidence, the corporate defendants should be precluded from

asserting a legitimate, nondiscriminatory (or nonretaliatory) reason for her termination. Because I

cannot conclude that such a sanction is justified in this case, however, and because Dunn does

not otherwise argue that she is entitled to judgment as a matter of law, I will deny her motion for

summary judgment.[5]

 "Spoliation is the destruction or significant alteration of evidence, or the failure to

preserve property for another's use as evidence in pending or reasonably foreseeable litigation."

*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999). Upon a showing of

---

[5] Because Dunn does not argue that there are no genuine issues of material fact as to the reasons for her termination, I need not determine here whether she has in fact established a prima facie case as a matter of law, and thus I do not address the issue.

spoliation, a court may impose, in its discretion, a variety of sanctions, including the dismissal of

a claim or the entry of judgment in favor of a prejudiced party; the suppression of evidence; an

adverse evidentiary inference, such as the "spoliation inference";[6] fines; and attorney fees and

costs. *See Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 110–11 (E.D. Pa. 2005); *see also*

*Schmid*, 13 F.3d at 78–79 (acknowledging the "inherent authority of a district court" to impose

sanctions, in its discretion, for spoliation).

Of course, a party can be sanctioned for destroying evidence only if it had a duty to

preserve it. *See Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (quoting

*Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). "While a litigant is

under no duty to keep or retain every document in its possession . . . it is under a duty to preserve

what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to

lead to the discovery of admissible evidence, is reasonably likely to be requested during

discovery[,] [or] is the subject of a pending discovery request." *Zubulake v. UBS Warburg LLC*,

220 F.R.D. 212, 217 (S.D.N.Y. 2003) (internal quotation marks omitted). "The duty to preserve

evidence begins when litigation is 'pending or reasonably foreseeable.'" *Micron Tech.*, 645 F.3d

at 1320 (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). And once

this duty to preserve arises, a litigant must "suspend its routine document retention/destruction

policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."

*Zubulake*, 220 F.R.D. at 218.

Here, the duty to preserve evidence arose, at the latest, on January 16, 2009, when

---

[6] Courts may admit evidence "tending to show that a party destroyed evidence relevant to the dispute being litigated," and the "spoliation inference" refers to the inference that "the destroyed evidence would have been unfavorable to the position of the offending party." *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994).

defendants were served with a copy of Dunn's PHRC complaint. And given that defendants described Mackenzie as "the decision maker" regarding Dunn's termination (Dunn's Mot. for Summ. J. Ex. O ¶ 17), this duty to preserve evidence clearly extended to Mackenzie's documents regarding Dunn, including any notes he may have had on his computer that mentioned Dunn. Mackenzie testified that he prepared the document entitled "Regina Dunn and Andrew Mogilyansky" in November 2009,[7] and that in preparing that document he relied in part on the notes he kept on his computer. Mackenzie's testimony thus suggests that the notes at issue here were on his computer in November 2009, well after defendants' duty to preserve evidence arose, and thus were within the scope of evidence subject to the "litigation hold." Although Dunn has adduced no direct evidence that Mackenzie or anyone else deleted or otherwise destroyed these notes, the corporate defendants' failure to produce the notes suggests that they breached their duty to preserve the relevant documents on Mackenzie's computer.[8]

---

[7] It is unclear from Mackenzie's testimony whether he prepared the document in September or November (*see* Dunn's Mot. for Summ. J. Ex. F at 10:6–10, 167:18–22), but in either case my analysis remains the same.

[8] Contrary to the corporate defendants' contentions, it does not matter that they may not have been aware of the specific document at issue here. Given that it was, according to the corporate defendants, Mackenzie's decision to terminate Dunn, there was a reasonable likelihood that Mackenzie would possess documents relevant to Dunn's termination, and the corporate defendants thus clearly had a duty to put a litigation hold on his computer files and e-mail account to ensure the preservation of any relevant documents. And even if, as he testified, Petruzziello did not think that Mackenzie's files were relevant to this case, counsel should have known better. The corporate defendants had retained counsel by the time they responded to Dunn's PHRC complaint (the answer they submitted was signed by counsel), and counsel should have instructed the corporate defendants as to their duty to preserve Mackenzie's files.

Nor is there any merit to the corporate defendants' suggestion that they had no duty to preserve the document at issue because Dunn did not specifically request Mackenzie's electronic documents or e-mails. Dunn contends that such documents were within the scope of her discovery requests. But even assuming that she failed to request such documents, the corporate defendants' duty to preserve Mackenzie's files arose, at the latest, when they were served with Dunn's PHRC complaint, which was well before the commencement of this action and well

The next question is whether the corporate defendants' failure to preserve this evidence warrants any sanctions. Dunn contends that the corporate defendants intentionally destroyed Mackenzie's notes and that as a sanction for such spoliation of evidence, the corporate defendants should be precluded from offering a legitimate, nondiscriminatory (or nonretaliatory) reason for her termination.

Suppression of evidence—which is effectively what Dunn's desired sanction amounts to here—is one of the most "drastic sanctions" because it "strike[s] at the core of the underlying lawsuit," and it should therefore be imposed only "in the most extraordinary of circumstances." *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004); *cf. Schmid*, 13 F.3d at 79 (referring to district court's decision to bar testimony of plaintiff's expert because expert had altered allegedly defective saw in course of his examination by disassembling it, as a "drastic sanction," where it effectively deprived plaintiff of opportunity to prove his case). The Third Circuit has identified three "key considerations" in determining whether such a sanction is appropriate: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Id.* None of these considerations weighs in favor of the sanction Dunn seeks here.

With respect to the degree of fault, as discussed above, the corporate defendants had a duty to preserve Mackenzie's documents regarding Dunn, and their failure to preserve his notes was, at the very least, negligent. But beyond her conclusory assertions that the corporate

---

before any discovery requests would have been made by Dunn.

defendants "intentionally destroy[ed]" Mackenzie's notes (Dunn's Br. at 13) and "took

affirmative steps" to delete this document (*id.* at 15), Dunn has adduced no evidence that the

notes were deleted willfully or in bad faith.[9] And in the absence of any evidence suggesting bad

faith on the part of the corporate defendants, I cannot conclude that the sanction sought by Dunn

is justified, particularly in light of my conclusion below that Dunn has not demonstrated

substantial prejudice. *Accord Scott v. IBM Corp.*, 196 F.R.D. 233, 246–48 (D.N.J. 2000) (in

employment-discrimination case, finding sanction of "striking [defendant's] defenses and

entering summary judgment in plaintiff's favor" unwarranted where there was "no direct

evidence that the documents were knowingly destroyed after plaintiff filed his EEOC complaint"

and where the "circumstances [were] also susceptible of an innocent explanation, including mere

negligence in failing to preserve possibly important documents"); *cf. Bull v. United Parcel Serv.,*

*Inc.*, 665 F.3d 68 (3d Cir. 2012) (concluding that district court's sanction of dismissal with

---

[9] Indeed, Dunn has adduced no evidence as to who deleted the notes or the circumstances of the notes' deletion. Although Petruzziello testified that he did not take any steps to ensure that Mackenzie's computer files and e-mails were preserved, he further testified that he "never thought about" whether documents on Mackenzie's computer could be relevant in this case. (Defs.' Br. Ex. J at 19:6–20; *see also id.* at 23:17–20 ("I didn't think of any documents on Mackenzie's file any more relevant than a document in one of the employees in the accounting office.").) And he explained that in the absence of a specific instruction to maintain an employee's computer files and e-mail account after that employee had been terminated, the deletion of such files was left to the discretion of the IT manager. (*Id.* at 12:8–13:19.) Bell, the IT manager, testified that no one had asked him to delete any information from the hard drive in Mackenzie's computer. (*Id.* Ex. I at 72:24–73:3.) And when asked whether he had deleted information from Mackenzie's hard drive or checked to see whether any information remained on the hard drive, he responded, "Not to my knowledge." (*Id.* at 71:23–72:20.)

I note, however, that the corporate defendants have not explained why they were unable to locate Mackenzie's "My Documents" folder and e-mail account during discovery. The fact that they did not discover these items until after Dunn filed her motion for partial summary judgment raises the question whether they made a good-faith effort to comply with Dunn's discovery requests. This alone, however, is not sufficient to warrant the drastic spoliation sanction sought here.

prejudice was abuse of discretion where there was no reasonable basis in record for finding bad faith and where lesser sanctions would sufficiently address prejudice to defendant); *Schmid*, 13 F.3d at 80–81 (concluding that sanction that deprived plaintiff of any opportunity to prove his claim was not warranted where there was no evidence that plaintiff intended to impair defendant's ability to defend itself and where there was no showing of substantial prejudice to defendant).

With respect to the second consideration, the degree of prejudice suffered, Dunn contends that the failure of the corporate defendants to produce Mackenzie's notes has deprived her of the ability to challenge the corporate defendants' proffered reason for terminating her. She contends that some of Mackenzie's deposition testimony was inconsistent with statements in the document that he had prepared in November 2009 entitled "Regina Dunn and Andrew Mogilyansky" and asserts that by failing to produce the notes at issue here, the corporate defendants have deprived her of "the ability to demonstrate concretely that Mackenzie was willing to prepare an account of [her] termination for [the corporate defendants'] benefit that was contrary to his own contemporaneous observations and conclusions." (Dunn's Br. at 18.) But Dunn has adduced no evidence that the missing notes would have been favorable to her. Courts must, of course, "take care not to 'hold[ ] the prejudiced party to too strict a standard of proof regarding the likely contents of the destroyed [or unavailable] evidence,' because doing so 'would . . . allow parties who have . . . destroyed evidence to profit from that destruction.'" *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) (quoting *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998)). But, at this juncture, given the evidence submitted so far, any prejudice to Dunn is simply too insubstantial to justify precluding the corporate defendants from

offering a legitimate, nondiscriminatory (or nonretaliatory) reason for terminating her. And even

to the extent that the notes would have been helpful to her case, Dunn will still have the

opportunity to examine (or cross-examine) Mackenzie at trial and may present evidence as to the

missing notes, if she so chooses.

In short, there is no basis in the current record for finding the bad faith or substantial

prejudice—the extraordinary circumstances—necessary to justify the sanction Dunn seeks.[10] And

because Dunn does not otherwise argue that she is entitled to judgment as a matter of law, I will

deny her motion for summary judgment.

An appropriate order accompanies this memorandum.

---

[10] In her motion for partial summary judgment, Dunn has not requested any other spoliation sanctions, and at this juncture I need not determine whether other sanctions may be appropriate. For now, it suffices to say that the sanction of precluding the corporate defendants from offering a legitimate nondiscriminatory (or nonretaliatory) reason for Dunn's termination is not warranted here.